May I please the court, Shane Brady on behalf of the defendants in this case. The question on this appeal as framed by the city or the defense appeal on the court is whether the Fourth Amendment right asserted by the plaintiff was clearly established at the time of the defendant's alleged misconduct. The answer to that question is no. There's no case law or rule that clearly established the law for the situation these officers faced in the hospital room. Counsel, let me just quickly get to the one area where I have a question about that. Certainly the details of this are fairly unusual and the briefing is pretty scattershot. But it seems to me that at least since Terry v. Ohio and Cibran v. New York, the police do not have a right to move people's clothing and examine them beyond or touch their clothing without a reasonable suspicion that they've done something wrong. So does that, first of all, do you agree that that constitutes clearly established law? And second, does it apply here? No, I don't agree that it clearly establishes the law and I don't agree that it applies. You don't agree that that's a clearly established principle in those two cases? I believe it's a clearly established law for investigative detentions, which is what Terry v. Ohio applies to. I would submit that when it comes to qualified immunity, that context is everything. Well, Cibran says, quote, before he places a hand on the person of a citizen in search of anything, he, meaning the officer, must have a constitutionally adequate reasonable grounds for doing so, end quote. And so I don't understand why that principle doesn't apply to searches, perhaps even more so to people who are not suspected of a crime. Well, I think, as I said, the context is everything. And this was not an investigative detention, which is, I think, what... That's what I just asked you. So what was it? That is the point that your briefs are all over the map on both parties as to what we're talking about. So in a very pointed question, what was the justification in your view for the photographing of an unconscious victim and moving the clothing? Well, first, I would say it was not a victim. This is a person. Tell me whether we call him a suspect. What was the justification that you offer for the conduct undertaken by the officers? The justification was to document the injuries after a significant use of force involving the suspect in this criminal case. And there are other cases besides the ones that Judge Graber mentioned regarding Terry that support what the officers did, which was the point of the briefing, was to kind of give a spectrum of the case law out there that could possibly apply to this case. Because there are cases that justify officers viewing underneath a suspect's clothes, including finding that viewing their undergarments was reasonable. OK, but let's just stop and try to parse this because, first of all, you now have shifted to saying that this person is a suspect. Is that your position? It's not a shift. There was probable cause for this person's arrest. And the officers went to the hospital as part of that investigation. And then your earlier answer to me was it doesn't make any sense because you started by saying Terry only applies if someone's a suspect. And now you said he's a suspect. Well, the record is the officers called 9-1-1 after the use of force. We know what the record says. What we're trying to understand is your position. So now you tell us that they are there as part of a criminal investigation. Is that right? No, I was trying to expand myself, Your Honor, to answer your question. They went there, according to their declarations, to follow up with a suspect if they were able and document the injuries from the use of force. They got to the hospital. They weren't able to follow up with them. So they documented the use of force after being told by the hospital staff where the injuries were. So I'm not shifting. I'm just explaining to kind of how this would evolve. It was more dynamic than I think we realized. But you have an unconscious individual, so that person cannot give consent. Correct? Agreed. Okay. And when I look at your reply brief, you're saying, well, the reason they went there to document the injuries was part of building and maintaining trust and transparency with the public. I'm having a little difficulty understanding that statement in conjunction with your argument now. Well, that's the point of the use of force investigation, is to investigate and document what happened during the incident. And that's what is, I think, required now for police departments to be transparent so the public understands what happens or the police chief understands what happens. I don't understand how that justifies anything. Suppose the plaintiff had been awake and said, I do not give you permission to take pictures. Can they just do it? Well, I think in that scenario, they probably would not do that. But if the hospital... How can the hospital give consent for an unconscious patient? What's the exigency? Is there any exigency at this point? Well, I think the exigency is spoken to by the officers and the expert from the city that documentation of the injuries could be lost if they weren't documented at the time. But isn't that what the hospital is doing? You could get the hospital records. They're documenting it for medical purposes. Well, I don't think that's the approach that law enforcement typically takes, Your Honor. I think they're trying to do a full... That's not the question whether they typically take it. The question is whether the officers knew or should have known that they did not have a right to do what they did. Whether they'd like to do it or they typically do it is not relevant. Well, it is relevant, Your Honor, because the question for qualified immunity is would every officer know what they did was unconstitutional. That's part of the analysis. Well, but the fact that they do it a lot doesn't make it right. If every officer in a police department decides they can beat a confession out of someone, it doesn't make it permissible. That's not what happened. But my point is simply that just because they do it is not a justification. But I'm saying it's part of the analysis that it's best practice. Part of the analysis is would every officer know that this was unconstitutional. It certainly is relevant is my point, Your Honor. Do you have any documentation in terms of the timing, in terms of, you know, this was fairly immediate? Was there any effort to determine whether the subject would be coming conscious within a period of time? Within how long does it take for these taser marks to disappear? Anything like that? I think the record indicates, Your Honor, it was, you know, several minutes or more than several minutes between the officers did their investigation of the scene and then went to the hospital immediately. No, that's not my question. Do you have any information on when they arrived at the hospital, if there was any medical judgment of when the individual would have become conscious or what the period of time would be for taser marks such as these to disappear? No, no medical evidence, Your Honor, other than just the plaintiff's, or pardon me, the defendant's expert that the evidence could have been lost if it wasn't documented. But I'm into my rebuttal time, so I'd like to just... The questions are important because another question I have is, you say, photographing injuries of unconscious subject under watch is common. And so my last question, and I do want you to have some rebuttal time, is what's the basis for that statement? The basis for that statement, as I said, is the declaration of the officers and the city's expert that it's best practice to go to the hospital to document injuries and that it's something that police do all the time for car accidents. But your precise point in your reply brief is an unconscious subject. Well, I'm relying on the evidence I just stated, Your Honor. Okay, thank you. Okay. We'll give you a minute for rebuttal when the time comes, because we asked a lot of questions. I appreciate that. Thank you. And we'll next hear from Mr. Hildes. Thank you, Your Honor. Good morning, Your Honor. Lawrence Hildes for Plaintiff Appellee. Katherine Katzenjammer, who is present with me in my office. May I please the court? Mr. Brady danced around some of the basic issues. First of all, yes, he had to concede finally that Terry is clearly established law. It's one of the pillars that Fourth Amendment law and constitutional jurisprudence are based on. And it doesn't just give the circumstances. It says that the search must be by the least restrictive means appropriate, the least intrusive. Counsel, let me ask you, doesn't it all rise or fall on the fact that they sort of moved the clothing or the hospital gown, as it were? If they had simply, let's say that your client had been injured on an arm that was clearly visible. Could they have just taken a picture of that without violating clearly established law? Yes, I think so. It rises and falls on moving the clothing out of the way. Right. So it's not just Terry, but Terry and Cibran and some of the other cases. Is there a factual issue about whether the clothing was moved? No, there's no dispute that the clothing was removed. The police in their declaration say that they're not sure whether they moved it or the hospital staff moved it for them. But in any case, it was done at their direction and because they wanted it moved. So either way, it's the police engaging in the strip search. You know, one of the concerns is your brief, like the others, is pretty thin on cases and citations. And the Supreme Court has cautioned us not to look at too high a level on such things as the scope of immunity under the Fourth Amendment. What case do you think is the strongest for you in terms of your claim of clearly established law? Well, actually, their cases, all of their strip search cases require that the person be in custody. But yeah, I think Cibran, I think Terry is extremely strong. I don't think that's changed. Well, Terry is quite different than a strip search. And I have some difficulty squaring this as a strip search as those cases go. Is there or is there not a bright line rule that the police cannot manipulate a person's clothing as part of a search without having a reasonable suspicion or some other recognized justification? Well, that's exactly it. All of the case, that's what Terry does. Terry sets the bright line requiring reasonable suspicion. There is no case law. There is no history of case law that makes an exception for a police investigation that isn't criminal. They can do they have a right to do a use of force investigation. But my client's permission is strictly voluntary. He has to give permission. It's a permissive. She has to give permission. It's a permissive search at that point. She has the right to say no. And she's unconscious. And that's the thing. They came up with a case with a fact pattern that's unique. But what they did is they took I don't use sports or military analogies. So I'm going to reach for something. They took a broken down car that wouldn't start, dressed it up with a bunch of fancy electronics and said, look, this is something brand new. But the core law hasn't changed. You have to have a you have to have probable cause of reasonable suspicion. There's no contraband. And the reason for the reasonable suspicion is for officers safety. And that's what Terry really says. It's hard. You can do the least intrusive search necessary for cases of officer safety. There's no officer safety issue here. She's unconscious in a hospital gown. There's no dispute that her underwear, which was feminine, was exposed. And there was a case cited by the magistrate, and I can't pull it at the moment, but that said that revealing of strips or revealing of undergarments in a in a search is not necessarily the least intrusive and can be an invasion of privacy, including for men. And the other thing is, she is not male. And it is not. They don't get absolutely relevant. There's no there's no different Terry rule for men, women or. And she was not obviously female at the time. It's just not in my view, not relevant. But it goes to the it goes to the intrusiveness because they're making a determination as to whether that may go to damages if if the case were to go forward. But as far as the officers are concerned, I don't see that that matters. What other question I have is they continue to say, well, we have expert testimony that said this is common police practice. And therefore, these officers could not have known that this would be constitutionally invalid. What effect in this qualified immunity appeal does the expert testimony have? To be perfectly honest, none. He wasn't he wasn't describing this situation and he wasn't on the scene and he doesn't work for this department. He doesn't actually know what the common practice is other than what they tell him. In addition, Mr. Brady conceded that none of those other searches that are common practice happened while the subject was unconscious. I mean, that in itself is a bright line. That should be a red flag warning of we have to be really careful what we do because we're doing a search of someone who can't object or consent. So I have another question, and that is the search has been variously characterized as to its purpose. As to both a criminal search in continuation of the events that occurred at that apartment. But then there's also some suggestion that it's really an administrative civil search because it's part of documenting use of police force. What is your position on whether this is a criminal or a civil search? Well, the city had not raised the idea that it was a criminal search until this morning. First of all, secondly, the crime that she was eventually accused of and was dismissed was supposedly an inappropriate touching of somebody else. You can't document or not document an inappropriate touching by taking pictures of the hazer wounds. I asked a really straightforward question. What is your position on whether this is a criminal search or a civil search? I'm saying it doesn't work as a criminal search. No, they have been very consistent up until now that this was an administrative search for the purposes of documenting injury in case she sued them. And they said that repeatedly. And as part of their internal use of force investigation, internal meaning not her within the department, she can consent to refuse to participate. But it was strictly administrative. And there is no case law and there has never been case law that allows a search in an administrative, non-criminal context. And the whole purpose of the Fourth Amendment is to protect the police, protect the public for the police walking up to someone and deciding they feel like searching them for their own internal purposes. I mean, that's the difference between a police state and a democracy is that they can't do that. They have to actually have a criminal nexus to do a search. And there wasn't one here at all. And they did it three hours later. She was in the hospital for three hours while they went and did other things. It's not like it was in a continuous motion from the time. And she wasn't handcuffed. She wasn't placed under arrest. They didn't transport her. She was never arrested. When she regained consciousness and was deemed to be physically able to, she was released by the hospital and went home. They served her by citation a week later. Thank you, counsel. Your time has expired unless either of my colleagues has another question. I think not. So, Mr. Brady, you have one minute for rebuttal. And I would appreciate whether you characterize it as a criminal or civil. Thank you. The search, I'm not shifting it. It sounded that way. I wasn't meaning to shift. The officers maintained the search was done for administrative purposes to document the injury. And I just want to say there's nothing in the record that says it was three hours that the officers went and did something else. And so the point I really want to make here before my time is up is it's the plaintiff's job. It's their burden to prove that the law was clearly established. The city's point and the officer's point is that there are lots of different areas of this Fourth Amendment case law out there. There's these Palmer cases that allowed and found searches of undergarments or viewing them was reasonable. There's community caretaking. There's these Bell versus Wolfish cases that analyze whether a search is reasonable or not. And none of those cases have found that a search in this context was unreasonable. There's hospital room searches that were searches have been found reasonable. So the defendant's point is, which one of those doctrines applied when these officers walked into that hospital room? And the answer is it's not clear which doctrine applied. The district court applied Terry, but that doesn't apply on its facts. So because it's not clearly established, these officers are entitled to qualified immunity. Thank you. Thank you, counsel. We appreciate the arguments from both of you. And the case just argued is submitted for decision.
judges: McKeown, Graber, Paez